NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WALTER N. STRAND, III,**
*Plaintiff-Cross-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2016-2450, 2016-2484

_____

Appeals from the United States Court of Federal Claims in No. 1:15-cv-00601-TCW, Judge Thomas C. Wheeler.

_____

Decided: September 7, 2017

_____

LUCAS TAYLOR HANBACK, Rogers Joseph O'Donnell, Washington, DC, argued for plaintiff-cross-appellant. Also represented by JEFFERY M. CHIOW; NEIL H. O'DONNELL, San Francisco, CA.

DANIEL KENNETH GREENE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., DOUGLAS K. MICKLE.

―――――――――――

Before LOURIE, HUGHES, and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge.*

The Government appeals a decision from the United States Court of Federal Claims reversing the Secretary of the Navy's decision denying Walter Strand's request to correct his military records and Mr. Strand appeals a finding in favor of the Government on its counterclaim seeking to recover $74,486.33 that it had erroneously paid to Mr. Strand during his civil confinement. While we agree with the trial court that the Secretary's decision is not supported by substantial evidence, because further administrative proceedings could remedy the defects in the Secretary's decision, we reverse with instructions to remand to the Secretary for further proceedings. Because the Government's counterclaim is not barred by the statute of limitations, we affirm.

I

Mr. Strand is a native of Chester, Pennsylvania, who upon graduation from high school enlisted in the Navy. He served for nearly nineteen and a half years, including spending over eleven years deployed in combat during the Persian Gulf War and War on Terror in Iraq and Afghanistan. Mr. Strand's commendations and personal awards include the Navy and Marine Achievement Medal (four awards), Good Conduct Medal (four awards), Meritorious Unit Commendation, National Defense Service Medal (two awards), Southwest Asia Service Medal (two awards), Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Military Outstanding Volunteer Medal, Sea Service Deployment Ribbon (two awards), Kuwait Liberation Medal, Enlisted Aviation Warfare Specialist, and Enlisted Surface Warfare Specialist.

In the spring of 2007, Mr. Strand finished his final combat deployment aboard the USS Enterprise aircraft carrier. His performance evaluations praised his "superb leadership and management skills," noted that his "leadership and technical expertise have been pivotal," and described him as a "dynamic leader" who should be "select[ed] for the most challenging assignments and promote[d] ahead of his peers." J.A. 183–86.

When he returned home, Mr. Strand discovered that his wife had moved out, emptied his bank account, taken his children and possessions, and filed for divorce. He attempted to reconcile and had a conversation with her about potentially getting together for dinner. Shortly after this conversation, he saw her sitting with a male companion in a car. Mr. Strand flew into a "fit," J.A. 31, and with "passion-fueled anger" discharged his gun at them, J.A. 122. He was subsequently arrested and convicted of attempted malicious wounding, attempted unlawful wounding, and use of a firearm in the commission of a felony. On February 9, 2009, he was sentenced to six years in prison.

On June 26, 2009, following his conviction, the Navy administratively separated Mr. Strand from service. However, until this date, the Navy had continued paying Mr. Strand his salary even though he had been in civil confinement since his arrest. Because he had at least 90 days of leave accrued, Mr. Strand waited three months after being in custody before seeking confirmation from his command that he was entitled to continue receiving pay. He was informed that the command was aware of his civil confinement and that he was entitled to continue receiving pay.

On September 24, 2010, Mr. Strand was released early from prison because of his model conduct. After his release, he sought employment, eventually moving back to Pennsylvania to work at a Hibachi Restaurant washing

dishes and cleaning. He used his earnings to pay child support and court costs in full. He also attended school at Delaware Community College, where he took various Network Engineering classes.

In 2011, Mr. Strand learned that the Navy was attempting to collect $74,486.33 of basic pay plus fees and interest that was paid to him while he was civilly confined. He disputed the debt with the Department of Treasury but was informed that the United States was not liable for the negligent or erroneous acts of its employees.

Around the same time, Mr. Strand petitioned the Board for Correction of Naval Records (BCNR) for a change to his naval record granting six months retirement credit so that he would have completed 20 years of service and be eligible for retirement benefits. On December 15, 2014, the BCNR considered Mr. Strand's conduct, the fact that he accepted responsibility for his misconduct, his rehabilitation, character references, and other evidence. The BCNR weighed "the seriousness of [Mr. Strand's] disciplinary infarctions and [that it did] not condone his misconduct" against Mr. Strand's "overall record of more than 19 years and six months of satisfactory service [and] his good post service conduct and his early release from civil confinement due to his good behavior." J.A. 89. Ultimately, the BCNR concluded that Mr. Strand "should be granted relief in the form of credited time served for retirement, i.e., approximately six months [and] that the reenlistment code should not be changed because his nonrecommendation for retention and/or reenlistment was based solely on his civil conviction." J.A. 89. Therefore, the BCNR recommended that Mr. Strand's naval record be revised "to show he was honorably retired with 20 years of service vice (sic) issued a general discharge under honorable conditions by reason of misconduct (civil conviction) on 26 June 2009." J.A. 90.

The Executive Director of the BCNR chose to seek Secretarial approval of the decision. On February 3, 2015, Mr. Robert Woods, the Navy's Assistant General Counsel for Manpower and Reserve Affairs, through delegated authority from the Secretary, rejected the BCNR's recommendations in a two-paragraph decision and refused to grant Mr. Strand his requested relief. According to Assistant General Counsel Woods, Mr. Strand was not entitled to relief in light of the Navy's core values, its practice in similar cases, and Mr. Strand's "long-standing history of FAP [Family Advocacy Program] involvement and domestic violence issues." J.A. 166–67.

On June 15, 2015, Mr. Strand appealed the Secretary's decision *pro se* to the Court of Federal Claims, and subsequently obtained counsel through the trial court's pro bono program. On December 28, 2015, the Government filed a counterclaim to recover the amounts that it had paid to Mr. Strand during his civil confinement.

On June 3, 2016, the trial court ruled in favor of Mr. Strand on his claim that the Secretary's decision to deny relief was arbitrary and capricious and ruled in favor of the Government on its counterclaim to recover its payments to Mr. Strand. Both parties appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the trial court's decision granting or denying a motion for judgment upon the administrative record without deference, applying the same standard of review that the trial court applied. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004).

The Government argues that the trial court erred by disregarding the substantial evidence supporting the Secretary's decision. We must reverse the Secretary's decision if it is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with

law.  *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Snyder v. Dep't of Navy*, 854 F.3d 1366, 1372 (Fed. Cir. 2017).

We conclude that the Secretary's decision is not supported by substantial evidence.  The Secretary relied on the sum of two facts in the record and two policy reasons to reject the BCNR's decision: (1) Mr. Strand's long-standing history of domestic violence issues and FAP involvement; (2) the seriousness of Mr. Strand's convictions arising out of his February 2008 actions; and that granting relief would be inconsistent with (3) the Navy's core values and (4) the Navy's practice in similar cases. J.A. 82.

The Secretary's finding that Mr. Strand had a "long-standing history of FAP involvement and domestic violence issues" is not supported by substantial evidence. The Secretary's sole basis for this statement is an April 2009 memorandum prepared by Captain H. D. Starling II, Mr. Strand's former commanding officer.  Captain Starling's statement, however, is conclusory and unsupported by the administrative record.  Prior to 2007 and the events that gave rise to Mr. Strand's separation from service, the administrative record reflects no history of FAP participation or domestic violence issues.  For example, the record does not contain a non-judicial punishment, counseling entry, court-martial entry, or military protective order.  While the Government argues that Mr. Strand's conduct giving rise to his civil confinement supports the Secretary's conclusion, Mr. Strand's conduct, though serious, does not reflect a "long-standing history" of issues.  Therefore, the Secretary's finding that Mr. Strand had a long-standing history of domestic violence issues and FAP involvement is not supported by substantial evidence.

Despite the foregoing, the Government argues that we should still uphold the Secretary's decision because it sets forth other policy rationales and evidence. But because the Secretary relied on a combination of intertwined reasons, and Mr. Strand has shown that at least one of those reasons is not supported by substantial evidence, the record is not clear as to whether the Secretary would still reach the same conclusion. Thus, the Secretary's decision must be reversed.

The Government submits that even if we find the Secretary's decision unsupported by substantial evidence, this case should be remanded to the Secretary for further investigation. It is an established principle of administrative law that courts should not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency," *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)), and that "a judicial judgment cannot be made to do service for an administrative judgment," *Chenery*, 318 U.S. at 88. Thus, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Gonzalez v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam) (quoting *Ventura*, 537 U.S. at 16). Here, the Secretary has not yet considered whether the BCNR's decision to grant Mr. Strand partial relief should be upheld in the absence of any evidence of a "long-standing history" of FAP involvement and domestic violence issues. We find no special circumstances that would support determining this question in the first instance. Therefore, this case must be remanded back to the Secretary for further review of the BCNR's decision.

## III

Turning to the cross-appeal, Mr. Strand argues that the Government's counterclaim seeking the salary paid to

him during his civil confinement is untimely.[1]  We review de novo whether the Court of Federal Claims possesses jurisdiction over a claim.  *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

In general, the government has six years to file suit seeking money damages based upon a contract.  28 U.S.C. § 2415(a).  However, § 2415 expressly provides that the six-year limitation period does not prevent the government from asserting its claim as a counterclaim that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.  28 U.S.C. § 2415(f).  Here, Mr. Strand filed a claim seeking an entitlement to the wages paid to him between his civil confinement and separation from the Navy.  J.A. 36.  The Government's counterclaim seeking recovery of those same wages "arises out of the transaction or occurrence that is the subject matter of" Mr. Strand's claim.  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 801 (Fed. Cir. 1999).  Therefore, the Government's counterclaim is timely under § 2415(f).

Next, Mr. Strand contends that the Government's counterclaim is untimely under 28 U.S.C. § 2501, which states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."  However, since the Court of Federal Claims may only hear claims against the government, § 2501 governs claims against the government. The counterclaim is a claim *by* the government and is controlled by the limitations periods set forth in § 2415 (titled, "Time for commencing actions brought by the

---

[1]  The Government did not challenge the trial court's decision to preclude the recovery of interest, fees, or penalties as the payments in question were due solely to the Government's error.

United States"). As a result, the Government's counter-claim is not barred by § 2501.

Finally, Mr. Strand argues that the Government did not file its pleading containing a counterclaim within a timely manner under the Rules of the United States Court of Federal Claims. A trial court's application of its rules is reviewed for abuse of discretion. *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (citations omitted). The Government filed its counterclaim on December 28, 2015, more than a month after the trial court's November 26, 2015 scheduling deadline. Mr. Strand filed a motion to strike, arguing that the counterclaim was untimely. The trial court, after deciding the parties' motions for judgment on the administrative record and ruling on the counterclaim, found the motion to strike moot. Despite the untimeliness of the pleading, Mr. Strand had the full opportunity to oppose the counterclaim and does not argue that he was prejudiced in his ability to oppose it. Thus, the trial court did not abuse its discretion in allowing the Government's counterclaim.

## IV

We have considered the parties' remaining arguments but find them unpersuasive. Accordingly, we reverse the trial court's ruling on Mr. Strand's claim, and instruct the trial court to remand this case to the Secretary of the Navy for further proceedings consistent with this opinion. On the Government's counterclaim, we affirm.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

No costs.