[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15079
Non-Argument Calendar
_____

Agency No. A201-461-572

VICTOR RENE BERMUDEZ BLANDON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 11, 2020)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Victor Rene Bermudez Blandon petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of his petition for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") arguing that the agency erred when it determined that (1) Bermudez Blandon failed to show past persecution or torture and (2) Bermudez Blandon did not show a well-founded fear of future persecution because he could reasonably relocate within Nicaragua.  We dismiss his petition in part and grant his petition in part and remand his claims for further consideration as to whether internal relocation was reasonable.

I.

Bermudez Blandon is a native and citizen of Nicaragua.  He is married and has five children, ranging in age from two to twenty years old.  He was involved in political activities in opposition to the political party in power in Nicaragua: the Sandinista National Liberation Front.  He had volunteered as a poll worker, electoral observer, and political organizer since 1996.  In April 2018, members of the Sandinista National Liberation Front set tires on fire outside his home and threatened his family because of his opposition to the Nicaraguan government. Following that incident, Bermudez Blandon and his family relocated to his mother-in-law's  home and did not sleep in their home.  His family remains in hiding with his in-laws.

2

Bermudez Blandon, however, continued to operate his motorcycle repair business located next to his home, a business he built up over some twenty years. On the morning of July 7, 2018, Nicaraguan police and paramilitaries stormed his home and business and "took valuables, broke machinery in [his] business, and tied [his] workers in an effort to intimidate them." With the help of a local priest, Bermudez Blandon fled. First Bermudez Blandon stayed with a friend of the priest for five days. After learning that nearby Sandinista paramilitaries began asking about him, Bermudez Blandon fled seven hours by foot to an abandoned farm in the mountains of Nicaragua. Two days after Bermudez Blandon fled, the police and paramilitaries burned down his home and business. He did not report any of these incidents to the Nicaraguan authorities because he feared they would protect the paramilitaries who caused these incidents. Bermudez Blandon was never attacked or physically harmed. He has been separated from his family since July 7, 2018.

On October 1, 2018, Bermudez Blandon left Nicaragua. From Nicaragua, he traveled through Honduras, Guatemala, and Mexico, before entering the United States without inspection on or around November 14, 2018. After he was detained by immigration officials, he expressed a credible fear of returning to Nicaragua. The Department of Homeland Security charged him with being removable under the Immigration and Nationality Act ("INA") because he was not in possession of

a valid entry document at the time he applied for admission to the United States, 8 U.S.C. § 1182(a)(7)(i)(I), and because he was present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i).  In a January 2019 hearing, Bermudez Blandon conceded that he was removable as charged.  He subsequently applied for asylum and withholding of removal under the INA, claiming that he was persecuted on account of his political opinion as well as his membership in two proposed social groups: (1) "a present movement leader" and (2) "a human rights defender against the Daniel Ortega government."  Bermudez Blandon also applied for CAT relief, asserting that he would be tortured at the acquiescence of the Nicaraguan government if he returned to Nicaragua.

The IJ presiding over Bermudez Blandon's application denied his claims for relief following a hearing on the merits.  The IJ found that Bermudez Blandon was not a credible witness and that the evidence he submitted did not corroborate his otherwise incredible testimony.  But even assuming that he was credible, the IJ determined that Bermudez Blandon's claims were nonetheless due to be denied. As to his asylum claim, the IJ determined that Bermudez Blandon did not establish past persecution because he failed to show that the harm he allegedly experienced rose to the level of severity required of persecution.  And he did not establish that he had a well-founded fear of future persecution because he did not show that he would be singled out for harm if he returned to Nicaragua.  The IJ further found

that Bermudez Blandon did not establish a well-founded fear of persecution because "DHS ha[d] shown by a preponderance of the evidence that [Bermudez Blandon] could reasonably relocate within Nicaragua for three reasons: (1) Bermudez Blandon lived at his mother-in-law's house in his hometown without harm for two months following the tire-burning incident, (2) his wife and children still live in his hometown (albeit in hiding), and (3) Bermudez Blandon lived without incident on the farm seven-hours away from his hometown without harm for three months, with "no evidence the Nicaraguan government and/or its supporters ever visited." Because the IJ determined that Bermudez Blandon failed to establish eligibility for asylum, the IJ found that Bermudez Blandon therefore failed to meet the higher burden for withholding of removal. Finally, the IJ determined that Bermudez Blandon failed to establish that he was eligible for CAT relief because he did not show that he personally would be at risk of torture if he returned to Nicaragua.

Bermudez Blandon appealed the IJ's denial of his claims to the BIA. Although he conceded that he had not experienced "harm in the past rising to the level of persecution or torture," he nevertheless argued that he established a well-founded fear of future persecution because the evidence showed there was "a clear likelihood that he [would] experience such harm upon return to Nicaragua." He stated that the IJ only relied on a 2018 Human Rights Report he had submitted as

5

evidence of country conditions and "disregarded" the rest of his evidence.  He also argued that the IJ erroneously placed the burden on him to show that he could not relocate reasonably within Nicaragua.

The BIA dismissed Bermudez Blandon's appeal.  Even assuming that he was credible, the BIA agreed that Bermudez Blandon had not established a well-founded fear of persecution because the government had shown that he could reasonably relocate within Nicaragua.  It stated that Bermudez Blandon's ability to live on the farm in the mountains from July to October 2018 without harm showed that he could avoid persecution in Nicaragua.  It also noted that his wife and children remained in Nicaragua unharmed.  And because the BIA determined that Bermudez Blandon could not meet his burden of proof for asylum, he could not meet the higher standard for withholding of removal.  Lastly, the BIA concluded that Bermudez Blandon was ineligible for CAT relief because he had not shown that it was more likely than not that he would be tortured by, or with the consent of, the Nicaraguan government because he could not demonstrate that he suffered torture, and he could relocate within Nicaragua.  This petition for review followed.

## II.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  Findings of the IJ that are not reached by the BIA are not

6

properly before us. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

We review legal determinations *de novo*, and factual determinations under the substantial evidence test. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). The substantial evidence standard requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). We reverse the BIA's factual determinations only when the record compels a reversal. *Id.*

### III.
#### A. The BIA Erred in Dismissing Bermudez Blandon's Asylum Claim

In order to establish eligibility for asylum, an alien applicant must demonstrate that he (1) was persecuted in the past on account of a protected ground or (2) has a well-founded fear that he will be persecuted in the future on account of a protected ground. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). On appeal, Bermudez Blandon argues that he established past persecution as well as well-founded of future persecution because of his political opinion. In support, he contends that the paramilitaries believed that he and his family were home when they burned his house down, which indicates that they intended to kill them. He also argues that the government failed to meet its burden to prove that it was reasonable for him to relocate within Nicaragua and that the BIA did not consider

7

the record in accord with the factors to determine relocation reasonability, as set forth in 8 C.F.R. § 1208.13(b)(3).

### 1. We Lack Jurisdiction to Consider Petitioner's Past Persecution Argument

To start, we cannot review Bermudez Blandon's claim that he experienced past persecution, even if that claim is only in support of a reasonable fear of future persecution.  We lack jurisdiction to review any claim as to which the petitioner has failed to exhaust his administrative remedies.  *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).  Thus, we lack jurisdiction to hear any argument that a petitioner failed to raise before the BIA.  *Id.*; 8 U.S.C. § 1252(d)(1).  Bermudez Blandon failed to exhaust his arguments regarding past persecution because he did not raise them in his brief to the BIA.  In fact, Bermudez Blandon conceded that he did "not dispute that he has not experienced harm in the past rising to the level of persecution or torture."  The BIA thus never had an opportunity to rule on the question, and we lack jurisdiction to do so.  *See Amaya-Artunduaga*, 463 F.3d at 1250.  Accordingly, we dismiss his petition in part.

### 2. DHS did not demonstrate that internal relocation was reasonable

Even if an asylum applicant is unable to establish past persecution, he may still be eligible for asylum if he can show that he has a well-founded fear that he will be persecuted in the future on account of a protected ground.  *Ruiz*, 440 F.3d at

8

1257. To establish a well-founded fear of future persecution, the applicant must present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1287 (11th Cir. 2004). Further, an applicant does not have a well-founded fear of future persecution if he could "avoid persecution by relocating to another part of the applicant's [home] country," where such relocation is reasonable. 8 C.F.R. § 1208.13(b)(2)(ii). In cases, such as this one, where the persecutor is a government or government-sponsored, "it shall be presumed that internal relocation would not be reasonable, unless [DHS] establishes by a preponderance of the evidence that, under all the circumstances it would be reasonable for the applicant to relocate." *See* 8 C.F.R. § 1208.13(b)(3)(ii). Immigration regulations identify considerations relevant to whether relocation is reasonable in a given case, including, but not limited to: "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* § 1208.13(b)(3).

In *Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1226 (11th Cir. 2006), we clarified that this regulation requires the BIA to determine that relocation was reasonable, not just that it would allow the asylum-seeker to evade persecution.

Thus, we concluded that even if the aliens could have evaded persecution elsewhere in their home country, the BIA committed "reversible error" when it failed to consider any of the factors identified in the regulations as to whether such relocation would have been reasonable. *Id.*

In the case at hand, there is no indication that the BIA assessed any of the relevant factors in determining whether Bermudez Blandon could reasonably relocate. The BIA's decision that DHS met its burden rested solely on the basis that Bermudez Blandon was able to "live in the mountains outside of his town from July 2018 to October 2018 without the Sandinistas looking for him in this area" and that his "wife and children remain with his in-laws living outside of their town without suffering any harm." In other words, the BIA focused only on whether Bermudez Blandon could successfully relocate to evade persecution, and failed to consider the second part of the inquiry which is whether DHS established by a preponderance of the evidence that such location was "reasonable" in light of the factors outlined in the regulation and the circumstances of the case. *See id.* (explaining that the immigration regulation envisions a two-part inquiry: (1) whether relocation would be successful, and (2) whether relocation would be reasonable (citing *Gambashidze v. Ashcroft*, 381 F.3d 187, 192 (3d Cir. 2004))); 8 C.F.R. 1208.13(b)(3)(ii). Consequently, because the BIA failed to consider whether Bermudez Blandon's relocation was "reasonable," we conclude that its

determination that DHS met its burden is not supported by substantial evidence.

Accordingly, we must remand the case for further review and a determination in

the first instance as to whether relocation is both possible and reasonable. *See*

*Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam) (explaining that the

proper course, where the IJ or BIA failed to make adequate findings or give

reasoned consideration to certain matters, "'is to remand to the agency for

additional investigation or explanation'" (quoting *I.N.S. v. Orlando Ventura*, 537

U.S. 12, 16 (2002))).

> B. Because the BIA denied Bermudez Blandon's Withholding of Removal and CAT relief on the basis that he could reasonably relocate, we remand those claims for reconsideration as well

The BIA affirmed the IJ's determination that Bermudez Blandon was

ineligible for CAT or withholding relief on the basis that DHS had "shown by a

preponderance of the evidence that the respondent could reasonably relocate to

another part of Nicaragua to avoid harm."[1]  Because we conclude that the BIA's

determination that Bermudez Blandon could reasonably relocate was not supported

by substantial evidence, we also remand the withholding and CAT claims for

further proceedings not inconsistent with this opinion.

---

[1] The BIA also affirmed the IJ's CAT and withholding denials on the basis that Bermudez Blandon had not established past persecution and so, by extension, could not have established that he had experienced past torture.  Because we do not have jurisdiction to review the past persecution claim, we do not review the BIA's denial of CAT and withholding relief on that ground.

**PETITION DISMISSED IN PART, GRANTED IN PART, AND REMANDED.**